## Mary Helen Knowles, Appellant, v. William A. Hastings and Aluminum Products Company, Appellees.

### Gen. No. 41,261.

Heard in the third division of this court for the first district at the June term, 1940. Opinion filed May 27, 1942.

Miller, Gorham, Westcott & Adams, of Chicago, for appellant; Sidney S. Gorham, Jr. and William Simon, both of Chicago, of counsel.

Arthur W. Sprague, of Chicago, for appellees; Abraham Redman, of Chicago, of counsel.

Mr. Presiding Justice Burke delivered the opinion of the court.

In a complaint filed in the circuit court of Cook county on April 10, 1939, Mary Helen Knowles alleged that William A. Hastings, E. P. McClure and plaintiff each owned an undivided one-third interest in certain real estate in Oakland, California;. that on February 14, 1938 the property was sold and the proceeds divided among the three; that from January 1, 1936, until the date of sale, the net rents collected from the property amounted to $2,902.60, which were transmitted by agents in charge of the property to William A. Hastings; that plaintiff was entitled to be paid one third of said rents, or $967.53; that the net rents were deposited by Hastings with the Aluminum Products Company, a corporation, and that although often requested, neither Aluminum Products Company nor Hastings had paid to plaintiff any part of said sum of $967.53. The complaint also contained allegations for money had and received. She prayed judgment against William A. Hastings and Aluminum Products Company for $967.53, plus interest at the rate of 5 per cent per annum from the date upon which they received the remittances. The defendants filed a general answer. Hastings admitted he received the money for the use of plaintiff, which he delivered to the corporate defendant for her use. Defendants further answered that plaintiff and the corporation contracted for the sale by plaintiff to the corporation of certain shares of its own stock, and that as a part of the contract of sale, said indebtedness was to be extinguished. The corporation filed a counterclaim, praying for specific performance of the alleged contract for the sale of the stock. The case was heard by the court without a jury, which entered findings in favor of the defendants, and a decree that the contract of sale be specifically

performed, to reverse which this appeal is prosecuted.

The counterclaim for specific performance involved 932 shares of the common stock of the Aluminum Products Company, which has its principal office at La Grange, Illinois. The 932 shares of stock were in the name of the City National Bank and Trust Company, as trustee. Plaintiff Mary Helen Knowles was the beneficiary under the trust. The discussion as to the settlement of the Oakland, California rent account, and also as to the sale of the 932 shares of stock out of which this controversy arose, was between William A. Hastings, Chairman of the Board of Directors of the corporation, and Fred H. Knowles, husband of plaintiff. Prior to becoming Chairman of the Board of Directors, Mr. Hastings was President of the corporation. He is in active charge of its affairs. Mr. Knowles is in the insurance business. The Aluminum Products Company and Hastings were anxious to acquire the 932 shares of stock held in the name of the City National Bank and Trust Company, as trustee. Negotiations took place between Fred H. Knowles, acting for plaintiff, and William A. Hastings, acting for the corporation, as to the payment of the Oakland rent account. On March 3, 1938, the corporation sent a letter and a statement to Mr. Knowles showing that there was a total credit payable to the three tenants in common of $2,902.60, of which plaintiff's share was $967.53. The letter stated that Mr. McClure and Mr. Hastings had accepted preferred stock in the corporation as payment for the rent account and proposed that plaintiff accept the same settlement. On April 12, 1938, Mr. Hastings wrote the following letter to Mr. Knowles:

"My son tells me you would like to get back all our insurance business. I assume that a 5 year contract would be of cumulative value to you. While I have not computed the actual value in terms of total commissions on all premiums, I assume from what Mr.

Rogerson once told me that the amount would be quite sizable. I assume we have now more insurable property than we had when he had the account. You have something the company can use to advantage. When I purchased the Rogerson 'interests' in the A. P. Co., I had discussed with Trustees in First National Bank, not the purchase of part of their interests but 100% of their interests. That was the deal. The overlap of common stock was a surprise to me later. However, that water is over the mill now and perhaps we can consummate a deal for mutual interests.'' On April 18, 1938, Hastings, in a letter to Mr. Knowles, suggested that ''we pay you Oakland back rents in preferred stock with the agreement that we will retire same at the rate of $100.00, payable monthly, until paid. The common stock, the A. P. Co. will offer to buy all of it for $2.50 per share and pay you $200.00 per month for same. If things happen to put the A. P. Co. in possession of certain cash funds we will agree then to pay you all the balances in full and promptly.'' This was followed by a postscript, stating that ''If agreeable Judge Sprague [attorney for the corporation] will draw up a short agreement and the proper legal authority for the Board of Directors.'' On April 28, 1938, Knowles sent the following letter to Hastings:

''I gather from your letter of April 18, that you are still interested in some kind of an agreement involving the purchase of Mary-Helen's stock and my carrying your insurance. Altho when I spoke to you last I did not believe we would be able to come to an agreement, your fair attitude in this letter leads me to believe that we can come to terms. As I explained to you before, I do not feel that it is fair for me to accept for Mary-Helen, an amount for her stock less than it is actually worth, even tho you promised me your insurance for five years. The commission on this insurance, while I would be very happy to handle it for you, will still not make me weathy. I have felt that when, as and if

the Aluminum Products stock reached a value of $4.00, a share, I would let you have it, but in view of the present conditions, I believe that $2.50 would be a fair price, if the transaction were for cash. Suppose we waive all interest and dividends on this stock and the balance from the Oakland property back rents and call the price $3. per share. Your suggested method of payment will be agreeable. I have negotiated with the Hartford Accident & Indemnity Company regarding your workmen's compensation insurance and have finally persuaded them to write it on the old basis of $1.40 per hundred dollars of payroll. This represents a discount of 28 per cent off the manual rate. Altho this may seem elementary to you, this has been difficult due to your recent unfortunate losses and due to the Bureau ruling which prohibits a discount of greater than 20 per cent on all new risks. If you are still amenable, I should like to see this transferred now. Regarding the fire insurance, I am sure that we can obtain this on a very favorable basis. I cannot feel that a written agreement is hardly the proper solution to the method of handling this negotiation. In my opinion there are too many angles involved including the fact that there are three interests involved on my side, namely, the Bank, Mary-Helen and myself. I am convinced that they will be agreeable, but I am sure the Bank would not sign an agreement. I would prefer simply to depend on your fairness and promises. Awaiting your advices, I am." On May 2, 1938, the corporation, by W. A. Hastings, wrote Mr. Knowles:

"Your letter of April 28th received. Your proposal, viz: $3.00 per share for 932 shares is agreeable. We to pay you $200.00 per month until you shall have received a total of $2796.00. All other accounts to be wiped out in accordance with your letter of April 28th, referred to above. Your suggestions on the insurance are acceptable." On May 13, 1938, in a letter signed by Hastings, the corporation wrote:

"It may be more than 30 days before we can' send the C. P. A. statement to the Bank as per your request. To change capital structure set-up at Springfield it will be necessary to hold a special stockholders meeting or get waivers. In the meantime will you temporarily accept preferred stock to wipe out the Oakland rent arrears with the understanding that both this Preferred stock and the 932 shares of common stock will be liquidated promptly, as per your own written proposal under date of April 28th, and our written acceptance under date of May 2nd? Please advise."

Plaintiff maintains that she and the corporation did not enter into a contract for the sale of 932 shares of common stock. Defendants argue that plaintiff and the corporation entered into a contract for the sale of 932 shares of common stock and the liquidation of the Oakland rent credit. The position of defendants is that plaintiff contracted to sell to the corporation 932 shares of its common stock at $3.00 a share, which sum was to include the liquidation of the debt of $967.53 owing to plaintiff. Defendants insist that the letters exchanged between the parties, culminating in defendants' letter of May 2, 1938, consituted a binding agreement which a court of chancery will enforce by a decree for specific performance. Plaintiff points out that she does not own any stock in the corporation, and that the stock is in fact owned by the City National Bank and Trust Company, as trustee, under a trust agreement, and urges that the letter written by Fred H. Knowles on April 28th was merely a preliminary negotiation with respect to a contemplated sale and does not purport to bind Mary Helen Knowles in the sale of the stock. She also insists that the letter of April 28th was signed by her husband and does not purport to have been written for or on her behalf. In our opinion the record discloses that Mr. Knowles had full authority to act in behalf of plaintiff.

We have also considered the testimony of Mary Hamilton, secretary for the corporation, in which she recited a telephone conversation with Mr. Knowles following the receipt by the corporation of Mr. Knowles' letter of April 28th, and before the dispatch of the corporation's letter of May 2nd. She testified that in this conversation she asked Mr. Knowles whether he meant what he said in his letter, namely, "that he was willing to cancel the Oakland rent by a transfer of the stock," and that he answered, "Yes." Mr. Knowles testified that he had no recollection of the conversation with Miss Hamilton, but that he would not deny it. He also testified that if he had such a conversation he probably said that he meant what he said in his letter. Our view is that the conversation with Miss Hamilton amounted to no more than an oral verification of what was said in the letter and does not enlarge the language of the letter.

The position of defendants is that the letter of May 2, 1938 constituted an acceptance of the alleged offer contained in Mr. Knowles' letter of April 28th. Mr. Knowles' letter of April 28th was in reply to Mr. Hastings' letter of April 18th. It will be noted that Mr. Hastings' letter of April 18th suggested payments totaling $300 a month. In his letter of April 28th, Mr. Knowles tells Mr. Hastings that "your suggested method of payment will be agreeable." Yet, in defendants' letter of May 2nd, which they say constituted an acceptance of the offer contained in the letter of April 28th, defendants tell Mr. Knowles that they "will pay you $200 per month until you shall have received a total of $2,796." Hence, in the letter of May 2nd, the corporation said it would pay $100 less than was contemplated in the letters of April 18th and April 28th. Despite the contention of defendants that the letter of May 2nd constituted an acceptance of the alleged offer contained in Mr. Knowles' letter of April 28th, defendant corporation wrote a letter on May 13th,

which clearly shows that the negotiations for the sale of the common stock and the payment of the Oakland rent account were still in progress. It is apparent from these letters, that the minds of the parties were not in agreement. It is well established that a contract may be created by the exchange of letters. We are satisfied that the exchange of letters between the parties was intended as preliminary negotiations, and that the parties did not intend such letters to be a binding contract. From a careful reading of all the letters, and particularly Mr. Knowles' letter of April 28th, we are convinced that he did not intend that letter to be a binding offer, but merely a preliminary negotiation. The evidence does not establish the existence of a contract with the certainty required as a basis for specific performance. Hence, the chancellor was in error in finding that the parties entered into a binding contract to sell the stock and in decreeing specific performance.

At the trial it was stipulated that the plaintiffs, Mary Helen Knowles, William A. Hastings and E. P. McClure, were the owners of the real estate located in Oakland, California, and that plaintiff's share in the net rentals from the property was $967.53. This money was actually received by the defendants prior to March 1, 1938. Both of the defendants are liable to plaintiff in the sum of $967.53. Plaintiff also claims interest at the rate of 5 per cent per annum from March 1, 1938. Section 2 of the Interest Act (sec. 2, ch. 74, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 67.02]) provides that creditors shall be allowed to receive interest at the rate of 5 per cent on money due on the settlement of accounts from the day of liquidating accounts between the parties and ascertaining the balance. The account in the instant case was liquidated and the balance ascertained on or about March 1, 1938. Hence, plaintiff is entitled to recover interest.

As we have stated the affirmative reasons for our opinion, it is unnecessary to discuss many of the other points covered in the briefs.

For the reasons stated, the decree of the circuit court of Cook county is reversed and the cause remanded with directions to dismiss the counterclaim for want of equity and to enter judgment for plaintiff and against defendants for $967.53 plus interest at the rate of 5 per cent per annum from March 1, 1938, until the day judgment is entered.

*Reversed and remanded with directions.*

HEBEL and KILEY, JJ., concur.